## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 07-1486 RB |
| | ) | |
| THEODORE LEE WRIGHT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** came before the Court on Defendant's Motion to Suppress Physical Evidence and Statements (Doc. 30), filed on August 21, 2007.  A hearing on this motion was held on September 4, 2007.  Having considered the submissions of counsel, testimony, relevant law, and being otherwise fully advised, I issue these findings of fact and conclusions of law.

### Findings of Fact

1.      During the early morning hours of July 8, 2007, United States Border Patrol Agent Salomon Orosco[1] was assigned to the primary inspection area of the fixed border patrol checkpoint on Interstate 25, located 26 miles north of Las Cruces, New Mexico.

2.      All northbound traffic on Interstate 25 is funneled through the checkpoint.  About a mile and a half south of the checkpoint, numerous traffic control devices direct traffic to slow down and move into the right hand lane.  As traffic approached the checkpoint, well-lit signs clearly identify the area as a border patrol checkpoint.  A large stop sign with red blinking lights is located at the primary inspection area.  All northbound traffic is required to stop at the checkpoint.

3.      At about 3:00 a.m, Defendant drove a Ford Taurus four-door rental sedan into the

---

[1] Agent Orosco has over five years of experience with the Border Patrol.

primary inspection area of the checkpoint.  Co-Defendant Anderson was in the front passenger seat.
The windows were closed.  As Defendant approached the primary inspection area, he slowed, but
did not stop, at the stop sign with the red blinking lights.

4.     Agent Orosco put up his hand and yelled: "Hey! Hey! Stop! Stop!"  Defendant
stopped the vehicle, but did not roll down the window.  Defendant and Anderson stared at Agent
Orosco through the closed windows.  Agent Orosco motioned for Defendant to lower the window.

5.     After a few seconds, Defendant lowered the driver's side window.  Agent Orosco
identified himself and asked Defendant and Anderson to state their citizenship.  Neither Defendant
nor Anderson answered.  Both stared straight ahead.  Defendant gripped the steering wheel and
glanced at the rear view mirrors.

6.     Almost immediately after Defendant lowered the window, Agent Orosco smelled the
pungent odor of raw marijuana mixed with the scent of dryer sheets, which are commonly used for
masking the odor of marijuana during transport.  Agent Orosco has encountered the combination
of odors of raw marijuana and dryer sheets on many occasions during the span of his 5-year career.
The smell is very strong and unmistakable.  From his position, standing directly outside the open
driver's side window, Agent Orosco was able to smell the odor of marijuana combined with the
scent of dryer sheets.

7.     Agent Orosco continued to ask Defendant and Anderson to state their citizenship.
Neither answered.  Defendant asked Agent Orosco: "Where am I?" and "What is this?"  Agent
Orosco explained that Defendant was at a border patrol checkpoint.  As Agent Orosco was talking
to Defendant, Agent Orosco saw, from his vantage point, standing directly outside the driver's side
window, an object partially covered by a blanket in the back seat.

8.     Agent Orosco repeatedly directed Defendant to put the car in park and turn off the

2

engine.  Defendant did not comply, but continued to grip the steering wheel and also gripped  the

gear shift.  Defendant continued to ask: "What is this?" and "What is going on?"

9.       Agent Orosco feared that Defendant would flee.  Agent Orosco knew the vehicle

contained contraband because he could smell it.  Agent Orosco believed that if Defendant were

directed to drive into the secondary inspection area, Defendant would seize the opportunity to drive

off at a high speed.  Agent Orosco had been involved in cases where the suspect tried to flee.  Agent

Orosco wished to avoid a high speed pursuit that would place officers, and the public, in danger.

For this reason, Agent Orosco did not direct Defendant to the secondary inspection area.  Instead,

Agent Orosco directed Defendant to put the vehicle in park and hand over the keys.  Defendant did

not initially comply with Agent Orosco's directives to put the vehicle in park and hand over the

keys.

10.       Agent Orosco repeatedly asked Defendant to turn off the car and hand over the keys

in a firm, but non-threatening, voice.  After several requests, Defendant turned off the engine and

handed the keys to Agent Orosco.

11.       Agent Orosco asked Defendant to exit the vehicle.  Defendant did not comply.  Agent

Orosco asked Defendant what was under blanket.  Defendant did not answer and avoided eye

contact.

12.       Agent Orosco asked Defendant to unlock the back driver's side door.  Defendant did

not initially comply.  After several requests, Defendant complied.  Agent Orosco opened the back

door and saw a cooler behind the driver's seat, partially covered by a blanket.

13.       Agent Orosco directed Defendant and Anderson to step out of the vehicle.  Agents

arrested Defendant and Anderson.

14.       The cooler contained a bundle of marijuana weighing just over five pounds.  The

bundle of marijuana was wrapped in cellophane, towels and dryer sheets.

15.     Having observed his demeanor during the hearing, I fully credit the testimony of Agent Orosco.

## Conclusions of Law

1.     The Fourth Amendment protects individuals against unreasonable searches and seizures.  *See* U.S. Const. amend IV.  The stop of a vehicle at a fixed border patrol checkpoint constitutes a "seizure" within the meaning of the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000).  However, based on the "'formidable law enforcement problems' posed by the northbound tide of illegal entrants into the United States," *Edmond*, 531 U.S. at 37 (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 551-54 (1976)), the Supreme Court has upheld brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens.  *Martinez-Fuerte*, 428 U.S. at 562-63.

2.     In *Martinez-Fuerte*, the Supreme Court examined the reasonableness of seizures at permanent Border Patrol checkpoints, and balanced the government's need to enforce customs and immigration laws against the intrusion on motorists passing through the checkpoints. *Martinez-Fuerte*, 428 U.S. at 563-64.  The Court held that the stops and questioning "may be made in the absence of any individualized suspicion," *id.* 428 U.S. at 562, "that it is constitutional to refer motorists selectively to the secondary inspection area [without reasonable suspicion]," *see id.*, 428 U.S. at 563, and "that the Border Patrol officers must have wide discretion in selecting the motorists to be diverted."  *Id.,* 428 U.S. at 563-64.

3.     Since *Martinez-Fuerte*, the Tenth Circuit has "recognized that no individualized suspicion is necessary to stop, question, and then selectively refer motorists to a secondary inspection checkpoint and that Border Patrol agents have virtually unlimited discretion to refer cars

4

to the secondary inspection area." *United States v. Ludlow*, 992 F.2d 260, 263 (10th Cir. 1993) (internal quotations and citations omitted). Accordingly, "a routine checkpoint inquiry may properly take place at a primary inspection area, a secondary inspection area, or both as long as the scope of the inquiry is appropriate." *Ludlow*, 992 F.2d at 263-64.

4.    When Defendant initially failed to stop at the clearly illuminated stop sign, Agent Orosco properly directed Defendant to stop at the fixed border patrol checkpoint. *See Martinez-Fuerte*, 428 U.S. at 563-64. Indeed, all traffic is required to stop at the primary inspection area of the checkpoint. Once Defendant was stopped, as part of the primary inspection, Agent Orosco properly directed Defendant to lower his window and questioned Defendant and his passenger about their citizenship. *Id*.

5.    Almost immediately after Defendant lowered the window, Agent Orosco recognized the distinctive odor of marijuana combined with dryer sheets emanating from the interior of the vehicle. As he questioned Defendant and Anderson about their citizenship, Agent Orosco observed an object in the back seat, covered by a blanket. These sensory perceptions occurred during a brief primary inspection process, which was reasonably related in scope to the border-related objectives of the checkpoint.

6.    A visual observation by a law enforcement officer from a vantage point he rightfully occupies does not constitute a search. *United States v. Gonzalez-Acosta*, 989 F.2d 384, 387 (10th Cir. 1993). Moreover, "[p]olice officers are not required to close their eyes to indications of possible wrongdoing that are disclosed at roadblocks." *United States v. Maestas*, 2 F.3d 1485, 1493 (10th Cir. 1993). Indeed, "[b]order patrol agents are not required to ignore suspicious circumstances, even if such circumstances may not be pertinent to citizenship and immigration status." From his lawful vantage point, Agent Orosco perceived the unmistakable odor of marijuana

5

combined with a masking agent and observed a suspicious object in the back seat, partially covered by a blanket.  *See Gonzalez-Acosta*, 989 F.2d at 388.   These observations, combined with Defendant's non-compliant behavior, gave rise to probable cause to search the vehicle.

7.      "Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or other evidence which is subject to seizure under the law."  *United States v. Stephenson*, 452 F.3d 1173, 1177 (10th Cir. 2006) (internal quotations omitted).   "An objective standard measures probable cause - whether the facts and circumstances within the officer's knowledge sufficiently warrant an officer of reasonable caution to believe contraband or evidence of a crime will be found."  *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).   Probable cause is evaluated "in relation to the circumstances as they would appear to a prudent, cautious and trained police officer."  *Stephenson*, 452 F.3d at 1177 (citing *United States v. Treto-Haro*, 287 F.3d 1000, 1006 (10th Cir. 2002)).   In the probable cause determination, the Court must look at the totality of the circumstances of each particular case. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

10.      "An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause."  *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) (internal quotations omitted); *see also United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that odor of raw marijuana, combined with nervous behavior and vague description of travel plans, satisfied probable cause standard); *United States v. Wald*, 208 F.3d 902, 907 (10th Cir. 2000) (stating that the odor of raw methamphetamine would suffice to provide probable cause for a trunk search); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) (holding that when an officer encounters the "overpowering smell of raw marijuana" emanating from a vehicle, probable cause to search the

vehicle's trunk exists).

11.     The combination of factors in this case, including: (1) the time of day; (2) the rolling stop; (3) the failure to respond to questions repeatedly posed; (4) the odor of raw marijuana combined with a masking agent emanating from the vehicle; (5) the observation of an object in the back seat covered with a blanket; and (6) the numerous incidents of non-compliant behavior gave rise to probable cause to believe the vehicle contained a load of marijuana.  *United States v. Vasquez-Castillo*, 258 F.3d at 1213.  Based on the totality of the information developed during the primary inspection, Agent Orosco had probable cause to search the vehicle.  The search revealed the presence of over five pounds of marijuana.

12.     Probable cause to arrest exists when the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quotation omitted).   In addition to the factors discussed above, Defendant's behavior indicated that he might flee. Under these circumstances, it was reasonable for Officer Orosco to ask Defendant to hand over the keys before the search.  Based on the factors discussed herein, Officer Orosco had probable cause to arrest Defendant.  The search and arrest did not violate Defendant's Fourth Amendment rights.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Physical Evidence and Statements is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

7